IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

```
FILED

OCT 1 7 2022

CLERK, U.S. DISTRICT COURT
     NORFOLK, VA
```

**ABRAHAM A. ATKINS,**

**Petitioner,**

**v.**                                                    **Criminal No. 2:17-cr-116 (06)**

**UNITED STATES OF AMERICA,**

**Respondent.**

### *MEMORANDUM OPINION & ORDER*

Before the Court is Abraham Atkins' ("Petitioner") Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Pet'r's Mot. for Comp. Release ("Pet'r's Mot."), ECF No. 706. The Government opposed the motion. Gov't's Resp. in Opp. to Comp. Release Mot. ("Resp. Opp."), ECF No. 713. Petitioner replied. Pet'r's Reply to Gov't's Resp. in Opp. to Comp. Release Mot. ("Pet'r's Reply"), ECF No. 715. For the reasons below, Petitioner's Motion for Compassionate Release is **DENIED**.

### I.     FACTUAL AND PROCEDURAL HISTORY

On August 9, 2017, Petitioner and thirteen co-conspirators were named in a Twenty-Five Count Indictment charging them with various crimes related to the manufacturing and distribution of heroin from 2007 to 2017. Indict., ECF No. 3. On September 5, 2017, Petitioner plead guilty to Conspiracy to Manufacture, Distribute, and Possession with Intent to Manufacture and Distribute One Kilogram or More of Heroin. Order Acc'g Plea, ECF No. 99. On December 13, 2017, Petitioner was sentenced to 240 months followed by ten (10) years supervised release. J. of Pet'r, ECF No. 239. On January 11, 2019, the Court reduced Petitioner's sentence to 120 months imprisonment to be served concurrently with sentences imposed in Chesapeake Circuit Court in

cases CR04-2537 and CR04- 2539. Order to Reduce, ("Order to Reduce"). ECF No. 505.

On August 3, 2020, Petitioner filed his first motion for compassionate release. Emergency Comp. Release Mot., ("First Letter Comp. Release Mot."), ECF No. 584. On September 8, 2020, Counsel filed a supplemental Motion. First Comp. Release Mot., ECF No. 591. Petitioner argued that the §3553(a) factors weigh in favor of his release and that his medical conditions in light of COVID-19 warranted an extraordinary and compelling reason for his release. *Id.* On October 23, 2020, the Court denied the motion. Order Denying Comp. Release, ("First Order Denying Comp. Release"), ECF No. 608. Petitioner is currently incarcerated at FCI Fort Dix with a projected release date of March 30, 2026.[1]

On March 10, 2022, Petitioner filed a *pro se* motion for compassionate release pursuant to U.S.C. § 3582(c)(1)(A), requesting a reduction of his sentence. Letter Comp. Release Mot., ECF No. 691. On May 12, 2022, Petitioner, through counsel, filed a Motion for Compassionate Release pursuant to the FIRST STEP Act. Pet'r's Mot., ECF No. 706.

Petitioner alleges that a reduction in sentence is appropriate for the following reasons: First, if sentenced today, Petitioner's applicable advisory guideline range would be lower than his original sentence, creating a disparity; second, the COVID-19 pandemic has made Petitioner's sentence more severe; and third, while incarcerated, Petitioner has engaged in rehabilitation. *See* Pet'r's Mot.; Pet'r's Reply., 1. Together, Petitioner alleges these circumstances constitute extraordinary and compelling reasons that warrant his release. *Id.* Accordingly, Petitioner requests that the Court reduce his sentence to 84 months, followed by a period of supervised release. Pet'r's Mot., 18.

---

[1] *See* Federal Bureau of Prisons, "Find An Inmate," *BOP.gov*, https://www.bop.gov/inmateloc/ (last visited Sept. 26, 2022) (listing Petitioner's release date as March 30, 2026).

## II. LEGAL STANDARD

### A.    The Threshold Requirement

A petitioner may bring a motion to modify their sentence after they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [petitioner]'s behalf or the lapse of 30 days from the receipt of such a request by the warden of the [petitioner]'s facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release has two options after requesting that the Bureau of Prisons ("BOP") bring a motion on their behalf: (1) exhaust their administrative remedies; or (2) wait 30 days from the date of their initial request to the BOP. *United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) ("§ 3582(c)(1)(A) outlines two routes—one of which does not require exhaustion of administrative remedies."). In other words, a petitioner may satisfy the threshold requirement if they "request[] the Bureau of Prisons to bring a motion on their behalf and *either* fully exhaust[] all administrative rights to appeal the Bureau's decision *or* wait[] 30 days from the date of their initial request to file a motion in the district court." *Id.* (emphasis in original). Thus, a petitioner who made a request to the BOP at least 30 days prior may seek compassionate release with the district court whether the BOP has ruled on the request or not. *Id.* (holding that petitioner satisfied the threshold requirement by filing his compassionate release motion 149 days after submitting a request to the warden, which the warden denied) (citing *United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021); *United States v. Harris*, 973 F.3d 170, 171 (3rd Cir. 2020); and *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020)). Moreover, the threshold requirement is a non-jurisdictional claim-processing rule, which may be waived or forfeited if not timely raised. *Id.* at 129–30 (collecting cases from sister circuits holding the same).

3

**B.**      **The Compassionate Release Standard**

As amended by the FIRST STEP Act, a court may modify a term of imprisonment by motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the FIRST STEP Act was passed, the Sentencing Commission provided that a sentence may be modified in light of the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n.1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n.1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

U.S.S.G. § 1B1.13 is now outdated, however, following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020); *see also United States v. Lisi*, 440 F. Supp. 3d 246, 250 (S.D.N.Y. 2020), *reconsideration denied*, No. 15 CR. 457 (KPF), 2020 WL 1331955 (S.D.N.Y. Mar. 23, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release . . . [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts . . . ."); *United States v. Fox,*

4

2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive."). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i). *McCoy*, 981 F.3d at 288 (holding that district courts have broad discretion in deciding whether extraordinary and compelling circumstances exist for compassionate release).

## III.   DISCUSSION

### A.   The Threshold Requirement

The Court finds that Petitioner satisfied the threshold requirement. The Government does not contest such. *See* Resp. Opp. On March 15, 2022, Petitioner submitted his second request for compassionate release to the Warden at FCI Fort Dix. Pet'r's Mot., at Exh. 1. The Warden did not respond to the second compassionate release request. Pet'r's Mot., 3. On May 12, 2022, Petitioner filed a compassionate release motion through counsel. Pet'r Mot. Thus, more than 30 days passed since Petitioner filed his request.

### B.   Petitioner's Compassionate Release Request

The Court now turns to whether Petitioner has set forth an extraordinary and compelling reason to reduce his sentence. Petitioner alleges that a reduction in sentence is appropriate owing to the Post-*Norman* sentencing disparity, the impact of the COVID-19 pandemic, and the Petitioner's rehabilitation. Pet'r's Mot.; Pet'r's Reply. 1. The Government argues that Petitioner failed to show a disparity in sentencing, the reasoning of *Lancaster* and other Section 404 cases do not apply to compassionate release, that the Court has already ruled on the argument regarding

COVID-19, and finally that rehabilitation efforts on their own are not extraordinary and compelling. Resp. Opp., 2-3. In considering the factors above, in addition to the 18 U.S.C. § 3553(a) factors, Petitioner is not entitled to a reduction in sentence.

### 1. *Post-Norman Sentencing Disparity*

The fact that Petitioner would face a lower guideline range if sentenced today for the same conduct does not serve as an extraordinary and compelling reason for compassionate release because Petitioner is serving a sentence below the Post-*Norman* guidelines range. The Supreme Court has made clear "that the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence." *Concepcion*, 142 S. Ct. at 2404; *see also United States v. Brice*, No. 21-6776, 2022 WL 3715086, at *2 (4th Cir. Aug. 29, 2022) (explaining that nothing in the First Step Act prohibits district courts in this circuit from considering nonretroactive changes to the sentencing guidelines when assessing whether to reduce a sentence when evaluating motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A)).[2] Further, other courts in this Circuit have found that they "may consider changes in sentencing law—even nonretroactive ones—in assessing whether a defendant has shown extraordinary and compelling reasons warrant a reduction in his sentence." *United States v. Stuart*, No. 5:92-CR-114-BR-3, 2020 WL 7232074, at *3 (E.D.N.C. Dec. 8, 2020); *See, e.g., United States v. Brown*, 2021 WL 2389881 (W.D. Va. June 11, 2021) (reducing the defendant's sentence, though not granting immediate release, finding that "the disparity in length of sentence [defendant] would face today post-*Norman* is an extraordinary and compelling reason for relief"). Therefore, the claim regarding a post-*Norman* disparity is properly before the Court.

Here, the Court, guided by the original guideline range of 262-327 months, sentenced

---

[2] Petitioner is not seeking a sentence reduction based on § 404 of the First Step Act. Pet'r's Mot. at fn. 4.

Petitioner to 240 months. J. of Pet'r, ECF No. 239. On grounds unrelated to Petitioner's career offender designation, the Court later reduced Petitioner's sentence to 120 months. Order to Reduce, ECF No. 505. Petitioner's career offender designation was not disturbed. *Id.* In 2019, the Court of Appeals for the Fourth Circuit ("Fourth Circuit") decided *United States v. Norman* holding that conspiracy is not a controlled substance offense under the guidelines and does not support a sentence under career offender. 935 F.3d 232 (4th Cir. 2019). After the Fourth Circuit's decision in *Norman*, the guideline range for Petitioner would be 168 to 210 months of imprisonment. Petitioner is currently serving a sentence of 120 months which is below the post-*Norman* guidelines range. Therefore, the Petitioner is not serving a sentence that causes a disparity. Reducing his sentence now would cause the disparity.

### 2.    *Case-Specific Factors and the COVID-19 Pandemic*

Petitioner further argues that his incarceration during the COVID-19 pandemic constitutes "extraordinary and compelling reason" warranting relief. Pet'r's Mot. at 10-15.[3] *See United States v. Spano*, 476 F.3d 476, 479 (7th Cir. 2007) (finding merit to the argument that "the harsher the conditions, the shorter the sentence should be."). During the COVID-19 pandemic, courts have found an extraordinary and compelling reason for relief when an incarcerated person "shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (collecting cases). "Notably, the *fear* of contracting a communicable disease proves insufficient to justify a

---

[3] Petitioner argues that the Government "misses the point" of his argument with regard to the pandemic, which he clarifies is that "the proliferation of COVID-19 in federal prisons has resulted in a more punitive and less rehabilitative period of incarceration." Pet'r's Reply at 9. The Court recognizes the unique conditions incarcerated individuals have and continue to face in light of COVID-19, but the consequences of incarceration during the pandemic *generally*, as opposed to those that Petitioner faces *at his facility*, are insufficient to constitute an extraordinary and compelling reason for relief under § 3582(c)(1)(A)(i). *Feiling*, 453 F. Supp. 3d at 841.

sentence modification." *Id.* (emphasis in original) (internal quotations omitted).

First, Petitioner does not show a potential susceptibility to serious health risks from COVID-19. In his first Companionate Release Motion, Petitioner offered hypertension, obesity, and edema as underlying conditions that may exacerbate a potential COVID-19 infection. First Comp. Release Mot., ECF No. 591 at 2. Now, Petitioner offers his high blood pressure and obesity as reasons the Court should grant compassionate release. Pet'r's Mot. at 11. While the Centers for Disease Control and Prevention ("CDC"), indicates that individuals who have hypertension (high blood pressure) and obesity are at an increased risk of severe illness from COVID-19, Petitioner's health conditions have not changed since his first petition.[4] *See* Pet'r's Mot. at 12. These underlying medical conditions did not make out an extraordinary and compelling reason for relief when they were first presented to the Court, and nothing has significantly changed regarding Petitioner's health; therefore, the underlying medical conditions do not support an extraordinary and compelling reason for relief now.

Second, Petitioner has not established a particularized risk of contracting the disease at his prison facility. Although the Court recognizes and in no way minimizes the harsh realities that incarcerated individuals have faced during the pandemic, Petitioner does not mention any potential harsher conditions of confinement that are unique to him for purposes of compassionate release. *See United States v. Ramirez*, No. 98cr927, 2021 WL 5233512, at *5 (S.D.N.Y. Nov. 10, 2021) ("If challenging the conditions of confinement caused by the pandemic warranted a sentence reduction here, essentially every inmate who has been in BOP custody at any time since March 2020 would be entitled to a sentence reduction.").

---

[4] *People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Sept. 2, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.(last visited October 7, 2022).

8

Additionally, as of October 2022, the BOP has reported a total of 1368 recovered positive cases of COVID-19 for incarcerated people (2 current, 2 deaths) and 129 recovered cases (5 current) for staff at FCI Fort Dix.[5] While the handling of outbreaks at FCI Fort Dix prompted members of Congress to intervene and to demand testing at the facility, Petitioner fails to explain any potential harsher conditions of confinement that are unique to him in relation to these facts.[6] Pet'r's Mot. 11. Thus, Petitioner has failed to show that he faces either "a particularized susceptibility to the disease [or] a particularized risk of contracting the disease at his prison facility" such that the COVID-19 pandemic constitutes an extraordinary and compelling reason warranting relief. *Feiling*, 453 F. Supp. 3d at 841; *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.").

### 3.    *18 U.S.C. § 3553(a) Factors*

Overall, the § 3553(a) factors weigh in favor of a reduction in Petitioner's sentence. The Court recognizes that the nature and circumstances of Petitioner's offense are serious. *See* 18 U.S.C. § 3553(a)(1). Between 2013 and 2017 Petitioner entered a conspiracy with at least one other person to purchase, manufacture, distribute, and possess with intent to distribute heroin. Present. Investig. Rep. ¶ 1, ECF No. 693 ("PSR"). On or about December 19, 2016, Petitioner, and another occupant of the vehicle, refused to comply with a police order to pull over their vehicle. *Id.* at ¶ 11. While being chased by police officers, Petitioner and the other occupant of the vehicle threw drug-related items from the car. *Id.* at ¶ 12.

---

[5] *See* Federal Bureau of Prisons, "COVID-19 Corona Virus," *BOP.gov*, https://www.bop.gov/coronavirus/ (last visited Oct. 7, 2022).

[6] Joe Atmonavage, *Lawmakers have 'grave concerns' over how officials are handling COVID-19 outbreak at N.J. prison* (Nov. 9, 2020), https://www.nj.com/news/2020/11/lawmakers-have-graveconcerns-over-how-officials-are-handling-covid-19-outbreak-at-nj-prison.html

The Court also considers Petitioner's post-sentencing conduct and any rehabilitative efforts he has made. *See Concepcion v. United States*, 142 S. Ct. 2389, 2401 (2022) ("The text of the First Step Act does not so much as hint that district courts are prohibited from considering evidence of rehabilitation, disciplinary infractions, or unrelated Guidelines changes."); *Pepper v. United States*, 562 U.S. 476, 491 (2011). The Court commends Petitioner on gaining new employment skills and participating in substance abuse treatment. Pet'r's Mot.  Exh. 1 at 5. Petitioner recently completed a non-residential drug program in addition to other classes on drug-abuse education. *Id.* at 5-7. Throughout his incarceration, Petitioner has maintained a clean disciplinary record. *Id.* at 10. Further, Petitioner maintains connections with friends and family in the community who encourage and support him. Pet'r's Mot. 10. However, rehabilitation alone does not constitute an extraordinary and compelling reason to grant compassionate release. *See, e.g.*, *United States v. Hunter,* No. 21-1275, 2021 WL 3855665, at *11 (6th Cir. Aug. 30, 2021) (concluding that there was "no 'extraordinary and compelling' reason to reduce [the defendant's] sentence" when "[t]he only reason left standing [was the defendant's] rehabilitation in prison").

Overall, the Court finds that even though the § 3553(a) factors do weigh in Petitioner's favor, a reduction in sentence would undercut respect for the law. Critically, Petitioner does not show an extraordinary and compelling reason for release because his sentence falls below the post-*Norman* guidelines range. Petitioner therefore does not qualify for compassionate release.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner has not shown an extraordinary and compelling reason to grant compassionate release. Thus, Petitioner's Motion for Compassionate Release, ECF No. 706, is **DENIED.**

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED**.

Norfolk, Virginia
October 17 , 2022

Raymond A. Jackson
United States District Judge

11